### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRUSTEE LYNN HARWELL ANDREWS,** | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO. 16-0284-CG-C** |
| | ) | |
| **DEBTOR SUSAN D. ERNANDEZ**, | ) | |
| | ) | |
| Appellee. | ) | |

———————————

| | | |
|---|---|---|
| **TRUSTEE LYNN HARWELL ANDREWS** | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO. 16-0285-CG-C** |
| | ) | |
| **DEBTOR CHARLES B. WILLIAMSON**, | ) | |
| | ) | |
| Appellee. | ) | |

| | | |
|---|---|---|
| **TRUSTEE LYNN HARWELL ANDREWS** | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO. 16-0286-CG-C** |
| | ) | |
| **DEBTOR THEODORE SMITH, JR**., | ) | |
| | ) | |
| Appellee. | ) | |

———————————

| | | |
|---|---|---|
| **TRUSTEE LYNN HARWELL ANDREWS** | ) | |
| | ) | |

```
                                    )
        Appellant,                  )
                                    )
vs.                                 )   CIVIL ACTION NO. 16-0287-CG-C
                                    )
DEBTOR ANGELA R. SHAFFER,           )
                                    )
        Appellee.                   )
_____
```

## ORDER

These matters are before the Court on appeals from the bankruptcy court, pursuant to 28 U.S.C. § 158(a).  The parties have filed appellate briefs, which the court has reviewed.  The Court has determined that the facts and legal arguments are adequately presented in the briefs and the record and that the decisional process would not be significantly aided by oral argument.  As will be explained below, this Court finds that the bankruptcy court did not err in deciding to overrule the Chapter 7 Trustee's objections to the Debtors' claims of exemptions.  Accordingly, the orders appealed in each of these cases will be affirmed.

## I. Facts

The facts of these cases are not disputed.  All four cases involve debtors who filed for Chapter 7 bankruptcy relief after Alabama amended the state's homestead and personal property exemptions.  On June 11, 2015, Alabama raised the personal property exemption from $3,000 to $7,500 and raised the homestead exemption from $5,000 to $15,000. ALA. CODE §§ 6-10-2, 6-10-6.   All of the debtors in these cases have debts that arose both before and after the June 11, 2015 amendment.  In such "mixed debt" cases the parties dispute the extent to which the new exemption

limits should apply.  The Bankruptcy Court for the Southern District of Alabama ruled in *In re Middleton*, 544 B.R. 449 (Bankr. S.D. Ala. 2016) that in mixed debt cases the date of the petition determines which exemption limits apply.  As such, the new exemption limits were applied to mixed debt cases that were filed after June 11, 2015.  In the cases on appeal here, the Trustee objected to the application of the amended exemptions and the bankruptcy court overruled those objections based on *In re Middleton*.  The Trustee now appeals the decisions overruling the objections.

## II. Standard of Review

A bankruptcy court's findings of fact are reviewed for clear error, and its legal conclusions and any mixed questions of law and fact are reviewed *de novo. Educ. Credit Mgmt. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007) (citation omitted); *Christopher v. Cox (In re Cox)*, 493 F.3d 1336, 1340 n. 9 (11th Cir. 2007) (citation omitted); FED. R. BANKR. P. 8013. "The district court makes no independent factual findings," but instead reviews "the bankruptcy court's factual determinations under the 'clearly erroneous' standard."  *In re Colortex Industries, Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994) (citation omitted).  In the instant cases, the parties do not dispute the bankruptcy court's factual findings, only it legal conclusions.  Therefore, this Court's review is *de novo*.

## III. Discussion

The Trustee contends that the exemption to be used should be determined by the date each debt was created.  The Trustee argues that under ALA. CODE § 6-10-1,

the right of exemption is "governed by the law in force when the debt or demand was created."  Section 6–10–1 has been applied to prevent a debtor from claiming the new exemption if the debts were incurred prior to the amendment.  In *First National Bank of Mobile v. Norris*, 701 F.2d 902 (11th Cir. 1983), the Court of Appeals for the Eleventh Circuit addressed the application of a similar homestead exemption increase that went into effect on May 19, 1980.  In *Norris*, the Eleventh Circuit concluded that the debtor was limited to the old exemption where the debts were created prior to the change in Alabama law.  *Norris* found that the new exemptions were prospective. *Norris*, 701 F.2d at 905.  However, in *Norris* all of the debts in the debtor's estate were created prior to the amendment.  *Norris* was solely an "old debt" case and its application to "mixed debt" cases was not considered by that Court.[1]

This Court was previously confronted with the issue of how to apply exemption limits to mixed debt estates after Alabama raised the exemption limits on May 19, 1980.[2] *Goldsby v. Stewart*, 46 B.R. 692 (S.D. Ala. 1983); *In re Perine*, 46

---

[1] The *Middleton* case, on which the bankruptcy court based its decisions here, determined that "in Chapter 7 cases where all debts were created prior to the change in law, the old exemption limits apply pursuant to *Norris*." *In re Middleton*, 544 B.R. at 453.

[2] The Bankruptcy Court for the Southern District of Alabama also addressed mixed debt cases resulting from the 1980 change in exemptions. *See In re Browning*, 13 B.R. 6, 8 (Bankr. S.D. Ala. 1981); *In re Bradley*, 19 B.R. 265 (Bankr. S.D. Ala. 1982). The bankruptcy court found in *Browning* that where "most, if not all, of the debts listed therein were incurred prior to May 19, 1980 … the debtor is limited to those exemptions allowed prior to that date." *In re Browning*, 13 B.R. at 8.  The *Bradley* court, citing *Browning*, found that because the debtor in that case had debts that were incurred prior to May 19, 1980 he was entitled to claim only those exemptions allowable prior to May 19, 1980. *In re Bradley*, 19 B.R. at 267.

B.R. 695 (S.D. Ala. 1983); *In re Rester*, 46 B.R. 194 (S.D. Ala. 1984).  In *Goldsby*, Judge Pittman found that limiting debtors to the pre-amendment exemptions when some of their debts were incurred after the amendment violates § 6-10-1. *Goldsby*, 46 B.R. at 694.  The Court stated that "[u]nder Alabama law, the applicable exemption is determined by the statute in force when the debt was created." *Id.* (citing ALA. CODE § 6-10-1).  Judge Pittman noted there were problems with this conclusion but stated that the accounting and other problems that arise due to different amounts of exemptions being allowed to different creditors "will probably be of short duration" since the pre-May 1980 exemption claims were then approximately three years old. *Id.*  Judge Pittman then remanded the case to the bankruptcy court to determine the manner in which to apply the exemptions. *Id.*

In *Perine*, Judge Pittman again found that § 6-10-1 requires the application of the exemption statute that was in force when a debt was created and thus, that the debtor could not be limited to the pre-May 19, 1980 exemption when some listed debts were created after May 19, 1980. *In re Perine*, 46 B.R. at 697.  "Rather, the pre-May 19, 1980 exemptions apply to the debts incurred prior to May 19, 1980, and the post-May 19,1980 exemptions apply to the debts incurred after that date." *Id.* Judge Pittman then remanded the case to the bankruptcy court to apply the exemptions consistent with his order. *Id.*

In *Rester*, Judge Hand noted the decisions by Judge Pittman in *Goldsby* and *Perine* and found that in the case before him the bankruptcy court's attempt to apply the different exemption limits was not proper because it had not engaged in

any apportionment. *In re Rester*, 46 B.R. at 198. The bankruptcy court had allowed the debtor the post-amendment $3,000 personal property exemption for the post-amendment debts, but then allowed any creditors with pre-May 19, 1980 claims to reach up to the excess of $2,000 over the old exemption.[3] *Id.* Judge Hand found that this method did "not [afford] the debtor any advantage to which the new Alabama law entitles him." *Id.* Judge Hand stated that this resulted in the pre-amendment creditors being granted priority "based on the fortuitous date selected by the Alabama legislature to improve the lot of bankrupts by increasing the Alabama exemptions." *Id.* at 199. Judge Hand noted that the intent of Congress "was to give all individual debtors a fresh start, not allow some creditors to profit at the expense of the debtor's exemptions." *Id.* (internal citations omitted). Judge Hand further stated the following:

> Strictly applied, *Norris* does not mandate the Court's holding in this case that exemptions are dependent on the date on which the debt was incurred. There are at least three arguments for rejecting *Norris'* application in this situation. First, the bankruptcy courts in the other federal districts in Alabama are allowing the debtor a full $3,000.00 exemption in situations like this one. Thus the interest of uniformity in the bankruptcy laws, inclines the Court to reject split exemptions. More important is Congress' scheme for allowing bankrupts to salvage a limited amount of personal property from the financial debacle. Section 522(b) authorizes an "individual debtor" to "exempt from property of the estate", 11 U.S.C. § 522(b) (1979) (emphasis added). The estate is created by the filing of a bankruptcy petition. 11 U.S.C. § 541(a) (1979). Thus, the appropriate date for determining exemptions is the date of filing, not the date of indebtedness. Use of the latter time creates confusion in a process intended to simplify financial problems.
>
> Finally, it is evident from the legislative history that Congress intended some equitable amount of property to be exempt. The "opt-

---

[3] The personal property exemption prior to May 19, 1980 was $1,000.

out" provision of section 522(b) does allow states to set exemptions
based on local conditions and circumstances. The state exemption need
not be identical to the federal exemptions in section 522(d). *See, e.g.,
Rhodes v. Stewart*, 705 F.2d 159 (5th Cir.1983). It is argued that the
state exemption must not be set so low as to make a mockery of the
"fresh start" intended by Congress. *See, e.g., Cheeseman v. Nachman*,
656 F.2d 60 (4th Cir.1981). There is some reasoning that Congress did
not merely defer completely to the states on exemptions. Comporting
with this rationale, the low exemptions available under Alabama law
before May 19, 1980 would not meet the needs of the present
bankruptcy system. It is arguable therefore that construing the new
Alabama law as not completely repealing Ala.Code § 6–10–1 (1975)
would result in a conflict between the Alabama exemption law and the
superior federal Bankruptcy Code. To prevent such a conflict it would
be necessary to hold that the new Alabama exemptions apply without
regard to the date on which the debt was incurred. Such an approach
to the Alabama exemption problem cannot now be applied, as prior
opinions of the District have concluded otherwise.

*In re* Rester, 46 B.R. at 199–200 (footnotes omitted).  Thus, Judge Hand believed a

Debtor with pre and post-May 19, 1980 debts should be granted the post-

amendment exemption, but he found it inappropriate to do so because of Judge

Pittman's prior decisions.  Instead, Judge Hand held that a pre-amendment creditor

(or "old" creditor) would share in the $2,000 difference between the exemption limits

to the extent of each old creditor's share in the total unsecured indebtedness. *Id.* at

201.  For instance, if the pre-amendment unsecured claims represented 10% of the

total unsecured indebtedness, their total share in the differential would be $200,

effectively leaving the Debtor an exemption in the amount of $2,800 ($200 less than

the post-1980 exemption).  Using the 2015 amendment, the personal property

exemption was increased from $3,000 to $7,500 and if 10% of the total unsecured

indebtedness was represented by old debt they would be entitled to reach an

additional $450 – leaving the debtor an effective personal property exemption in the

amount of $7,050.[4]

Judge Hand's method of applying the exemptions after the 1980 amendment would provide creditors with the exemption in place at the time the creditors agreed to the debts and compromises the debtor's fresh start and entitlement to the new exemption only to the extent that the debtor has old debts, but its application would present difficulties.  The *Middleton* court noted that Judge Hand's method has both practical and legal problems. *In re Middleton*, 544 B.R. at 455.

Under Judge Hand's split exemption method, the debtor and trustee could not know the amount of the exemptions until all claims had been filed, unless the calculation was based on the debtor's own list of debts on his schedules. Bankruptcy Schedule F lists the debts but does not require the date each debt was incurred. Determining the dates for some debts may require considerable research and could result in debts to some creditors being split as portions of the debt could have been incurred at different times.  *Middleton* points out that if it is unknown which exemption will be applied, the Chapter 7 trustee cannot determine whether there is any non-exempt property to be liquidated and whether to even tell creditors to file claims. *Id.* at 455.  Additionally, old credit card debts are often purchased with no documentation indicating when the debts were incurred. *See Id*. at 456. Such difficulties would not be short lived because a new provision provides for periodic adjustment of the exemption amounts.  Pursuant to ALA. CODE § 6-10-12, Alabama will review exemptions and adjust them to reflect the cumulative change

---

[4] This example assumes, as in the *Rester* case, that there has been no homestead exemption claimed.

in the federal Consumer Price Index on July 1, 2017 and every three years thereafter.  "The adjusted amounts apply to exemptions claimed on or after April 1 following the adjustment date." ALA. CODE § 6-10-12.  Thus, application of §6-10-12 will complicate exemptions further in the future because after April 2018, debtors may come into bankruptcy with debts that arose when three or more different exemption limits were in effect.

The *Middleton* court pointed out that the last sentence of § 6-10-12, specifying that the adjusted amounts will apply "to exemptions *claimed* on or after April 1, following the adjustment date" indicates that the exemption to be applied is the exemption in effect at the time the exemption is claimed. ALA. CODE § 6-10-12 (emphasis added) and *see Middleton*, 544 B.R. at 453.  However, as the bankruptcy court concluded, although the statement in § 6-10-12 appears inconsistent with the "date of debt" provision of § 6-10-1, a statute must specifically list any prior laws it is amending, which it did not, and the statute does not take effect until April 2018.

Even if the last sentence of § 6-10-12 does not impliedly mandate that the time of filing be determinative, according to the *Middleton* court, Judge Hand's split exemption method violates the Bankruptcy Code.  In *Middleton*, the bankruptcy court found that for mixed debt cases applying the exemption limits as of the date of the petition "complies with Bankruptcy Code § 726(b) and is the approach most consistent with bankruptcy law and other state laws." *In re Middleton*, 544 B.R. at 452.  Section 726(b) states the following:

Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5),

> (6), (7), (8), (9), or (10) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

11 U.S.C. § 726(b).  Thus, under § 726(b), payments on claims of a specified class must be made pro rata among claims of that specified class.  "Section 726(b) embodies the Bankruptcy Code's fundamental goal for the equitable and consistent treatment of similarly situated creditors." *In re Chewning & Frey Sec., Inc.*, 328 B.R. 899, 917 (Bankr. N.D. Ga. 2005) (citations omitted).  "This is designed to promote equal treatment among classes of creditors versus the result produced outside of bankruptcy when creditors who are swifter and more aggressive in their collection efforts benefit at the expense of other creditors. 9D Am. Jur. 2d *Bankruptcy* § 3262 (2016) (citations omitted).

The Trustee in the instant cases advocates for a different calculation of the exemption amounts.  Citing *In re Murillo*, 4 B.R. 612 (Bankr. C.D. Cal. 1981) and courts that followed *Murillo*,[5] the Trustee argues that a debtor should be entitled to the exemption amount allowed by the exemption statute in effect as of the commencement of the case, minus the aggregate of all claims predating the new exemption, with the aggregate limited to the amount of the increase in the

---

[5] *In re Marzella*, 171 B.R. 485 (Bankr. D. Conn. 1994), *In re Duda*, 182 B.R. 662 (Bankr. Conn. 1995), and *In re Banner*, 394 B.R. 292 (Bankr. D. Conn. 2008).

exemption.  For example, if only the personal property exemption is claimed the increase from $3,000 to $7,500 would result in a differential of $4,500.  Under the Trustee's proposed method, if the pre-amendment unsecured creditors had claims above the pre-amendment amount of $3,000, then *all* of the unsecured creditors were entitled to up to the $4,500 differential.  The cases cited by the Trustee do not explain in detail how this amount will actually be distributed among the creditors. The courts that used this method determined the amount of the exemptions to be allowed and provided no directive as to how the funds should be distributed between the old and new creditors. The implication is that the debtor is simply allowed the determined exemptions and they are then applied equally against all unsecured debts as if they had all been created at the same time.  Under this calculation a debtor with no homestead who owes $7,500 or more to pre-amendment debtors could only claim the pre-amendment personal property exemption of $3,000, regardless of the percentage of the total debt the pre-amendment creditors represented.  This result is similar to what Judge Hand held in *Rester*: it affords the debtor no advantage to which the new Alabama law entitles him.  Under the Trustee's proposed calculations even if the "old debts" represented only 10% of the total unsecured debt, as in the example discussed previously, the debtor would still only receive the pre-amendment exemption if the pre-amendment debts amounted to $4,500 or more.  Under this scenario the "new debt" creditors would receive more if a portion of the unsecured debt is "old" because the exemptions would be reduced and they would be able to share in the allowed differential amount with the pre-

11

amendment creditors.  The Court notes that this method still presents the previously discussed problems in determining, at the time the petition is filed, which debts are pre-amendment and thus, determining the amount of the exemptions in a timely manner.  In all of the cases presented here on appeal, the pre-amendment debts have been determined to exceed the differential between the pre and post-amendment exemption limits and thus, all of the instant debtors would receive only the pre-amendment exemptions under the Trustee's proposed calculations. *See* (Doc. 11, p. 27 (setting out Trustee's calculations)). This Court finds little advantage to the *Murillo* method which is not easier to determine or more equitable than Judge Hand's method in *Rester*.  The method does comply with Bankruptcy Code § 726(b), but it does not afford the debtors any benefit from the new exemptions and thereby contravenes their right to a fresh start.

It is a "well-settled proposition that exemptions in bankruptcy are to be liberally construed in order to afford the honest debtor a fresh start." *In re Abbott*, 408 B.R. 903, 911 (Bankr. S.D. Fla. 2009) (citing *In re Hafner*, 383 B.R. 350, 353 (Bankr. N.D. Fla. 2008) and *In re Barker*, 768 F.2d 191, 196 (7th Cir.1985)) *see also In re Michael*, 339 B.R. 798, 801 (Bankr. N.D. Ga. 2005) ("Given that these exemptions are a fundamental component of a debtor's fresh start, they are construed liberally and the objecting party bears the burden of proof to show that an exemption has not been properly claimed." (citation omitted)); *In re Maritas*, 2008 WL 7801998, at *3 (S.D. Fla. Nov. 24, 2008) ("the court should begin with the basic proposition that exemptions are to be construed liberally in favor of providing

the benefits of the exemptions to debtors, because such liberal interpretation would 'best accord with the public benefit." (citation and internal quotations omitted)).

*Middleton*'s conclusion is also consistent with the Supreme Court's holding in *Owen v. Owen*, 500 U.S. 305 (1991).  In *Owen*, the debtor was entitled to a homestead exemption on his condominium when he filed his bankruptcy petition in 1986, but did not have that right in 1984 when a judicial lien attached to the property. *Id.* at 315-16.  The Supreme Court held that a debtor's ability to avoid the judgment lien under Bankruptcy Code § 522(f) was determined by the state law exemption in place at the time of the petition.  Bankruptcy Code § 522(b) establishes a debtor's right to claim exemptions from "property of the estate" and the estate is created when the debtor files for bankruptcy. *See id.* at 316; 11 U.S.C. § 522(b).

The relevant case law and statutes present a complicated web of conflicting directives.  The Court is aware of no method of applying the different exemptions that would be completely consistent with Alabama law, the Bankruptcy Code and relevant case law.  After reviewing the case law and statutes, the Court agrees with the bankruptcy court's thorough analysis in *Middleton* and finds the conclusion in Middleton is sound.

Because all claims of the same class must be paid pro rata under § 726(b), the *Middleton* court found that payments to unsecured creditors could not be apportioned based on the date of the debt.  Under § 726(b), payments to two creditors of the same statutory class must be made pro rata regardless of when each

debt was created.  "[T]here is no basis for dividing unsecured creditors into different classes of distribution based on differing exemption rights." *In re Middleton*, 544 B.R. at 456 (quoting *In re Kyle*, 510 B.R. 804, 816 (Bankr. S.D. Ohio 2014)).

As the *Middleton* court noted, "the state's ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code. *In re Middleton*, 544 B.R. at 457 (quoting *In re Weinstein*, 164 F.3d 677, 683 (1st Cir. 1999)).  "The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount." *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265, (1929) (citing U.S. Const. art. 1, § 8, cl. 4.). "States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." *Id.* (citations omitted).  Thus, to the extent Alabama Code § 6-10-1 requires debts in the same class to be treated differently because of the date the debts were created, the statute is preempted by the Bankruptcy Code. The Bankruptcy Code sets up priority schemes and requires that debts in the same class be treated equally.  Accordingly, unless all of the debts in a Chapter 7 bankruptcy estate were created prior to the amendment, the date of the petition must determine the exemptions to be applied. This conclusion is consistent with 11 U.S.C. § 726(b), with the statement in ALA. CODE § 6-10-1 that "[t]he adjusted amounts apply to exemptions claimed on or after April 1, following the adjustment date," with Judge Hand's view (although not his conclusion) that the appropriate date for determining exemptions is the date of filing, with the Supreme Court's decision in *Owen* regarding the applicability of

14

exemptions to pre-existing judgment liens, with the Bankruptcy Code's goal of providing a fresh start and with the interests of equitable and orderly distribution.

**IV. Conclusion**

For the reasons stated above, the following orders of the bankruptcy judges, which overruled the Chapter 7 Trustee's objections to the Debtors' claims of exemptions, are hereby **AFFIRMED**:

Order dated April 7, 2016 in Bankruptcy case No. 15-2775-JCO (Appellate case No. 16-284),

Order dated March 28, 2016 in Bankruptcy case No. 15-4067-JCO, (Appellate case No. 16-285),

Order dated April 8, 2016 in Bankruptcy case No. 15-3245-JCO, (Appellate case No. 16-286), and

Order dated March 21, 2016 in Bankruptcy case No. 15-2774-HAC, (Appellate case No. 16-287).

**DONE** and **ORDERED** this 11th day of January, 2017.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE